**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

**DISTRICT OF COLUMBIA, *et al.*,**

**Plaintiffs,**

**v.**

**THE KROGER CO., *et al.*,**

**Defendants.**

**Case No. 1:22-cv-3357 (CJN)**

**Hon. Carl J. Nichols**

**JOINT STATUS REPORT REGARDING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

Pursuant to this Court's November 3, 2022 Minute Order, Plaintiffs the District of Columbia, the State of California, and the State of Illinois ("Plaintiffs"), and Kroger Co. and Albertsons Companies, Inc. ("Defendants") submit this joint status report regarding Plaintiffs' Emergency Motion for Temporary Restraining Order.

**I. Proposed Briefing Schedule and Necessity of a Hearing**

**A. Plaintiffs' Statement and Proposed Schedule**

A Washington State court has issued a TRO blocking payment of the Special Dividend until at least November 10, finding that Washington was substantially likely to prevail on the merits of its claim that the agreement between Albertsons and Kroger to pay the Special Dividend was an unreasonable restraint of trade. A Preliminary Injunction hearing is scheduled in Washington State court on November 10. Thus, a decision by this Court on Plaintiffs' Motion for TRO by November 7 is no longer necessary. Plaintiffs have met and conferred with the Defendants, and Defendants have agreed that they will provide an Opposition to Plaintiffs' Motion by end of day today Eastern, November 4, 2022. Given that, Plaintiffs can and will reply

to Defendants' Opposition by end of day Eastern on Tuesday, November 8, 2022 (see chart below).

Plaintiffs do not believe that a hearing on their TRO motion is necessary—the Court will have briefing and declarations before it sufficient to resolve the Motion and Plaintiffs are willing to rest and have the Motion decided on the papers. Plaintiffs will move for a preliminary injunction after the Court's ruling on the TRO, and a hearing in conjunction with that motion will be more useful for the Court. If the Court wishes to hold a hearing, Plaintiffs propose that it occur on November 10. Holding a hearing any earlier is unnecessary given that the Washington State court has enjoined payment of the Special Dividend at least until then.

| **Event** | **Deadline** |
|---|---|
| Defendants to serve any opposition brief and supporting declarations. | November 4, 2022 11:59 pm |
| Plaintiffs to serve any reply brief and supporting declarations. | November 8, 2022 11:59 pm |

Plaintiffs respectfully request that the Court issue an interim order prohibiting Albertsons from paying the Special Dividend unless and until the Court has ruled on the Plaintiffs' Motion for TRO.

### B. Defendants' Statement and Proposed Schedule

As Plaintiffs note, a Washington State court issued a TRO blocking payment of the Special Dividend until November 10, when a preliminary injunction hearing will occur. As explained further below, Albertsons will suffer significant harm as a result of any TRO or preliminary injunction blocking payment of the Special Dividend – harm that will only increase with each passing day payment of the Special Dividend is restrained. As a result, Albertsons requires immediate resolution of this dispute and Plaintiffs – as the parties seeking the

extraordinary relief of a TRO and preliminary injunction – should not be allowed to delay that process to Albertsons' detriment. Defendants will file an opposition to Plaintiffs' motion for preliminary relief by end of day today, Eastern, November 4, 2022. Defendants request that the Court require Plaintiffs to file any reply by Monday, November 7 at 2:00 PM Eastern, and that the Court hold a hearing on whether a temporary restraining order should issue on Tuesday, November 8 or as soon as possible thereafter (see chart below) with a decision to be issued in advance of the November 10 preliminary injunction hearing in Washington State court or as soon thereafter as possible to ensure that all legal challenges to payment of the Special Dividend are resolved by that date.

| **Event** | **Deadline** |
|---|---|
| Defendants to serve any opposition brief and supporting declarations. | November 4, 2022 11:59 pm |
| Plaintiffs to serve any reply brief and supporting declarations. | November 7, 2022 2:00 pm |
| Court holds TRO hearing | November 8 |

Defendants object to Plaintiffs' request that the Court issue an "interim order." Plaintiffs cannot effectively secure a TRO – which is extraordinary relief that they carry a heavy burden to justify – by simply requesting an "interim order" that grants such relief without requiring Plaintiffs to carry their burden. Moreover, as Plaintiffs note, a Washington State court has temporarily restrained payment of the Special Dividend until November 10. So long as this Court resolves Plaintiffs' motion for preliminary relief prior to that date, there is no need for a TRO or "interim order" providing the same relief as a TRO by this Court.

## II. Statement on Anticipated Factual Disputes Between Affiants and Other Issues the Parties Believe Would Assist the Court.

### A. Plaintiffs' Statement

Plaintiffs' motion and its urgency reflect the fact that as soon as November 10, absent further action by the Washington State court or this Court, Defendants' Merger Agreement will change the competitive landscape irreversibly for the worse. In short, it will require Albertsons to pay $4 billion in a "Special Dividend" to its stockholders, an amount roughly equivalent to all the cash it has on hand, $1.5 billion of which Albertsons is borrowing from a revolving loan facility. It will do so at the same time that the Merger Agreement effectively prevents Albertsons from taking on new debt or issuing other securities that would mitigate the blow to its balance sheet.

The Merger Agreement Albertsons negotiated with Kroger thus constrains Albertsons, and does so at a time of economic downturn, when companies like Albertsons need to have liquidity (i.e., cash on hand), because they will have difficulty accessing capital, due to its non-investment-grade bond ratings, as detailed further in the Declaration of Professor Michael Steven Weisbach submitted with the Motion. Together, the Special Dividend, other Merger Agreement restrictions, and low bond ratings in an economic downturn create the perfect storm that will dramatically compromise Albertsons' ability to compete on pricing, service, quality, wages, and related investments during the merger review and even beyond, should the transaction not go through.

If Albertsons pays the Special Dividend, the injury to Albertsons' competitiveness, and the consumers and workers who depend on it, and regulators' interest in an untainted merger review will begin immediately. Once market dynamics change because of the large payout, it

will be impossible to reconstruct them as they were before. As Professor Weisbach's declaration makes clear, Defendants' confidence in Albertsons' post–Special Dividend financial health is unjustified: It has $6 billion in annual liquidity needs, will be paying $2.5 billion in cash and taking on $1.5 billion in new obligations to pay for the Special Dividend, will be driven down to about $500 million in cash on hand, will be constrained by Kroger from taking on essentially any new financing, and even if it weren't, should reasonably expect to be all but shut out of capital markets. Without money, Albertsons cannot compete.

In contrast, Defendants suffer no prejudice from waiting—they have publicly stated that they expect the transaction to close in early 2024. Defendants made that prediction in part, no doubt, because they knew this horizontal merger between fierce competitors would draw significant regulatory antitrust scrutiny—that is why the Merger Agreement also provides for divestiture of hundreds of stores. All Plaintiffs are requesting is that Defendants not be allowed to alter the status quo while regulators complete the necessary deliberate review of the deal's merits.

Albertsons' contention that its hands are tied should carry little weight, as the situation is one of Defendants' own making. Granting Plaintiffs' Motion, moreover, would at once reduce the publicity focused on the dividend, allow regulators and Defendants alike to return their focus to more traditional aspects of merger review, and permit Albertsons not to pay the Special Dividend without worrying that it would open itself up to shareholder lawsuits.

With respect to factual disputes, the parties' respective briefs and accompanying sworn statements will sufficiently apprise the Court of any factual disputes it may need to resolve in adjudicating Plaintiffs' motion.

**B. Defendants' Statement**

Plaintiffs' motion for preliminary relief is an unprecedented and ill-conceived intrusion into the internal affairs of a public company based on an entirely speculative theory of purported competitive harm that is belied by the Merger Agreement between Albertsons and Kroger. The preliminary relief sought by Plaintiffs is truly extraordinary in nature, will significantly harm Albertsons and its shareholders if granted, and requires this Court's resolution as soon as possible. Indeed, the concerted actions of various State regulators to stop payment of the Special Dividend – including securing a temporary restraining order blocking payment of the Special Dividend from a King County Commissioner in the State of Washington until a preliminary injunction hearing can occur on November 10 – are already causing significant harm to Albertsons and its shareholders.

Plaintiffs do not challenge the Special Dividend on its merits, nor could they, given they are not shareholders or creditors of Albertsons, and the undisputed factual record will show the Special Dividend is easily compliant with Delaware corporate law governing the payment of dividends, was properly (and unanimously) authorized by Albertsons' Board of Directors as part of a long-standing capital return strategy, followed a thorough review of the Company's financial status and anticipated future capital and liquidity needs, and will in no way undermine the Company's ability to meet its obligations to counterparties, employees, and customers or its ability to compete in the ferociously competitive grocery market. Instead, Plaintiffs allege there is an illegal agreement between Kroger and Albertsons to competitively weaken Albertsons during the period in which their proposed merger is under antitrust review. They cite no evidence in support of this purported agreement because there is none. As the record will show, declaration and payment of the Special Dividend was an independent act by Albertsons alone,

and the only agreement between Kroger and Albertsons – the Merger Agreement – contemplates that the Special Dividend *might* be paid, but does not require it and is not contingent on it. Nor does the alleged "agreement" make any sense. Albertsons cannot be certain the Merger will be approved by antitrust regulators and would not sabotage its ability to operate independently as a result. Nor would Kroger willingly pay nearly $25 billion to acquire Albertsons if it were unable to effectively compete in the markets it serves.

The Special Dividend Plaintiffs seek to enjoin is due for payment to Albertsons' shareholders on Monday, November 7. Under Delaware law, the Special Dividend is owed to Albertsons' shareholders and due for payment on that date. An injunction restraining payment does nothing to remove the liability from Albertsons' balance sheet or "improve" its financial condition; to the contrary, it subjects Albertsons to significant legal exposure to shareholders who are owed the Special Dividend or who traded in Albertsons' stock in reliance upon the Special Dividend being paid. That exposure increases every day payment of the Special Dividend is enjoined. Moreover, millions of shares of Albertsons' stock have been traded since the Special Dividend was announced in reliance upon the Special Dividend being paid. An injunction will harm some of those shareholders, and potentially enrich others, and create a judicially-constructed caste of winners and losers, and thus undermine the functioning of securities markets. In short, enjoining payment of the Special Dividend imposes significant harm on Albertsons and its shareholders that will grow by the day. Both the equities and the public interest demand that all actions to enjoin payment of the dividend be resolved as soon as possible.

Defendants expect that the Court will need to resolve disputes raised by the parties' submissions, including disputes between Plaintiffs' expert submission and Defendants' rebuttal

witnesses (including a defense expert and sworn testimony from Albertsons' CFO) as to the financial condition of Albertsons and its ability to compete following payment of the Special Dividend.

Dated: November 4, 2022

Respectfully submitted,

**FOR PLAINTIFF DISTRICT OF COLUMBIA:**

KARL A. RACINE
Attorney General for the District of Columbia

KATHLEEN KONOPKA
Senior Advisor to the Attorney General for Competition Policy

*/s/ Adam Gitlin*
ADAM GITLIN
Section Chief, Public Integrity Section
C. WILLIAM MARGRABE
GEOFFREY COMBER
ELIZABETH G. ARTHUR
Assistant Attorneys General
Office of the Attorney General
400 6th Street NW, Suite 10100
Washington, D.C. 20001
(202) 735-7516
dam.gitlin@dc.gov

**FOR PLAINTIFF STATE OF CALIFORNIA**

**ROB BONTA**
**Attorney General of California**
KATHLEEN E. FOOTE
Senior Assistant Attorney General
NATALIE S. MANZO
Supervising Deputy Attorney General

*/s/ Paula Lauren Gibson*____________
PAULA LAUREN GIBSON
Deputy Attorney General
California State Bar Number 100780
300 S Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 269-6040
paula.gibson@doj.ca.gov

**FOR THE STATE OF ILLINOIS**

**KWAME RAOUL**
**Attorney General**

/s/ *Elizabeth L. Maxeiner*
ELIZABETH L. MAXEINER
Bureau Chief, Antitrust
PAUL J. HARPER
BRIAN M. YOST
Assistant Attorney General
Office of the Illinois Attorney General
100 W. Randolph Street
Chicago, IL 60601
(773) 590 6837
paul.harper@ilag.gov

*Counsel for Plaintiff States*

**FOR DEFENDANT ALBERTSONS COMPANIES, INC.**

**DEBEVOISE & PLIMPTON LLP**

*/s/ Edward D. Hassi*
EDWARD D. HASSI
LEAH S. MARTIN
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 383-8000
thassi@debevoise.com
lmartin@debevoise.com

*Counsel for Defendant Albertsons Companies, Inc.*

**FOR DEFENDANT THE KROGER CO.**

*/s/ Mark A. Perry*
Mark A. Perry
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Phone: (202) 682-7511

Matthew M. Wolf (*pro hac vice*)

Michael B. Bernstein
Sonia K. Pfaffenroth
Jason Ewart
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001

*Counsel for Defendant The Kroger Co.*