UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DISTRICT OF COLUMBIA,** *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**THE KROGER CO.,** *et al.*,<br><br>Defendants. | Case No. 1:22-cv-3357 (CJN)<br><br>Hon. Carl J. Nichols |

**JOINT STATUS REPORT REGARDING PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION**

Pursuant to this Court's December 1, 2022, Minute Order, Plaintiffs the District of Columbia, the State of California, and the State of Illinois ("Plaintiffs"), and Defendants Kroger Co. and Albertsons Companies, Inc. ("Defendants") submit this joint status report regarding Plaintiffs' Motion for a Preliminary Injunction.

**I.    Proposed Briefing Schedule and Statement on Issues the Parties Believe Would Assist the Court.**

   A.  **Plaintiffs' Statement**

Since this Court's ruling on Plaintiffs' Motion for a TRO, Plaintiffs have been diligently investigating and developing the facts. Plaintiffs' additional factual assertions and expert analysis respond directly to declarations Defendants submitted and statements of Defendants' counsel at the November 8, 2022, Hearing on Plaintiffs' Motion for a TRO, and the Court's stated bases for denying Plaintiffs' Motion. Plaintiffs' investigation has yielded the following, as detailed further

1

in Plaintiffs' Motion for a Preliminary Injunction: First, there is further evidence demonstrating that the Dividend was agreed to between the Defendants, rather than the product of unilateral action. The Dividend was not the initial vehicle Albertsons planned to use to return capital to shareholders, and it only pursued that approach so it could do so in conjunction with the merger. Second, Defendants tied the payment of the Special Dividend to the merger itself in announcing the intention to pay the former on the same day they announced pursuing the latter, thereby converting the permissive language in the Merger Agreement into an obligation. Third, Defendants' negotiation of the size of the Dividend is inconsistent with Kroger merely assuring itself it was paying a fair price for Albertsons.

Plaintiffs also present further evidence that payment of the Dividend, in conjunction with the Merger Agreement's other restrictions on Albertsons, will harm competition, workers, and consumers. For instance, Defendants claimed, and this Court credited, statements regarding the ability for Albertsons to meet its liquidity needs out of its projected annual revenue. Since then, Plaintiffs have had the opportunity for their corporate finance expert to review those statements and opine upon them – an opinion that makes clear that Defendants' hand-waving at large revenue figures fails to support Albertsons' ability to access sufficient liquidity to compete at the same level at which it competes today.

In addition, the declarations of Defendants' executives and expert and representations of counsel averred that Albertsons would be able to access its revolving credit facility notwithstanding the admittedly restrictive provisions contained within the Merger Agreement. Plaintiffs have confirmed that those restrictive agreements would restrain Albertsons from accessing that revolving line of credit, because its use would be outside the ordinary course and Albertsons' historical practice, contrary to Defendants' representations.

With respect to the briefing schedule: A Washington State court has issued a TRO blocking payment of the Special Dividend ("Dividend") until at least December 9, 2022, when a Preliminary Injunction hearing is scheduled. While Washington State expects to prevail on its Motion for Preliminary Injunction, Plaintiff States here must account for the fact that Defendants have indicated publicly that they will pay the Dividend as soon as any injunction lapses.

Plaintiffs met and conferred with Defendants on December 2, 2022. Defendants told Plaintiffs that they will not agree to abstain from paying the Dividend pending resolution of this Motion: they intend to pay this Dividend as soon as they are able. Therefore, while Plaintiffs and Defendants were unable to agree upon a proposed schedule, Defendants' insistence on paying this Dividend as soon as possible necessitates a decision by this Court on Plaintiffs' Motion for a Preliminary Injunction by December 9, 2022.[1]

To that end, Plaintiffs propose Defendants provide their opposition, if any, to Plaintiffs' Motion by the close of business (5:00 PM Eastern time) on Tuesday, December 6, 2022. Plaintiffs will reply to any opposition by the end of the day (11:59 PM Eastern time) on Thursday, December 8, 2022 (see chart below).

| Event | Deadline |
| --- | --- |
| Defendants to serve any opposition brief and supporting declarations. | December 6, 2022, 5:00 pm |
| Plaintiffs to serve any reply brief and supporting declarations. | December 8, 2022, 11:59 pm |

---

[1] Defendants complain that Plaintiffs did not file an "actual motion . . . setting forth the specific relief sought . . . ." Not so. Plaintiffs' memorandum of law is its motion. LCvR 7(a) ("Each motion shall include or be accompanied by" a statement of points and authorities.). Both that document and the proposed order set forth the relief Plaintiffs seek.

Although this schedule is undeniably fast paced, this speed is necessary because of Defendants' own actions. Since even before litigation commenced, and at all points throughout, Defendants have been steadfast in their refusal to even consider waiting to pay this Dividend until appropriate regulatory review can occur. As a result, at all stages of this litigation, Plaintiffs, Defendants, and the Court have been forced to proceed with a breakneck speed that is inimical to the orderly and rational proceedings of the justice system.

Following this Court's denial of Plaintiffs Motion for a TRO, as explained above, Plaintiffs have continued their investigation, consulted with experts, and sought information both from the parties and from nonparties. However, while an investigation of this complexity would ordinarily take months, or even years, to complete thoroughly, Plaintiffs have been forced to compress their investigative steps into a mere three weeks, including over a holiday. Plaintiffs are nonetheless prepared to litigate this matter. Defendants should not be allowed to take advantage of a time crunch they themselves created by their insistence to pay this Dividend and defeat this Court's jurisdiction.

Defendants on the one hand complain about the tight timeline but then aver that Plaintiffs "failed to identify any changes in fact or law since November 8." If there is really no new evidence or law to contend with, briefing the motion quickly should be no burden. Of course, what Defendants do not want to acknowledge is that in the intervening weeks, Plaintiffs have quickly and thoroughly scrutinized the arguments and declarations Defendants put forth on Friday, November 4—which Plaintiffs had one business day to "rebut" at the time—and exposed their weaknesses. To the extent they need more time to respond, provided the Special Dividend

4

is not paid in the interim, Plaintiffs are amenable, and said so at the parties' December 2 conference.

Defendants, with zero evidence, suggest that Plaintiffs' decision to seek relief now is tactical, an example of gamesmanship. This is categorically untrue. Plaintiffs in this action have not coordinated their filings with the Washington State Attorney General or timed them to impede Defendants' ability to effectively litigate either lawsuit. Rather, Plaintiffs' having filed a new motion with new evidence and a supplemental expert declaration in less than a month, and despite the interceding Thanksgiving holiday, suggests Plaintiffs are moving as quickly as reasonably possible to advance the case's factual investigation and not overburden the Court with arguments it has already heard.

When meeting and conferring with Defendants, Defendants indicated they intend to file a Motion to Dismiss on December 22, 2022, the date on which their responsive pleading is due after Plaintiffs agreed to their consent motion extending their time to respond to Plaintiffs' complaint. Defendants suggested serving their Opposition to Plaintiffs' Motion for Preliminary Injunction at the same time and proposed this Court handle both Motions at the same time. To allay any concern that Plaintiffs are attempting to use an accelerated briefing schedule to impede Defendants' ability to litigate the Washington State matter, Plaintiffs are willing to agree to Defendants' proposed schedule provided the Court issue an interim order prohibiting Albertsons

from paying the Special Dividend until the Court has ruled on the Motion for Preliminary Injunction.[2]

Defendants will experience no additional prejudice from an entry of an interim order. Defendants have not brought to Plaintiffs' attention (nor have Plaintiffs independently found) a single shareholder lawsuit seeking damages against Albertsons for failing to pay the dividend. Given the incentives to be the first to file in shareholder litigation, it is unlikely that any such suits will be filed. Thus, the real world has debunked Defendants' claims that any delay exposes them to liability, as well as the further assertion that entry of such an interim order would prejudice them. Further, the lack of any threatened litigation (and Albertsons' own claimed ease of access to liquid capital) means that the $ 4 billion is not foreclosed from use but can (and should) be put towards effective competition through prices, quality, and service.

Should this Court decide to grant an interim injunction and order their opposition be due when Defendants request, Plaintiffs respectfully propose that Plaintiffs' joint Opposition to Defendants' Motion to Dismiss and Reply to Defendants Opposition to the Motion for a Preliminary Injunction be due on January 27, 2023 at 11:59 pm Eastern, and Defendants' reply to Plaintiffs Opposition to the Motion to dismiss be provided two weeks later (February 10, 2023 at 11:59 pm Eastern). Defendants' alternative schedule of giving Plaintiffs 8 business days to respond to their omnibus motion to dismiss and preliminary injunction opposition, encompassing multiple holidays, is unnecessary and uncalled for.

---

[2] Plaintiffs respectfully request such an interim order be issued should this Court decide on any briefing schedule that extends the decision of Plaintiffs' Motion beyond December 9, 2022.

### B. Defendants' Statement

As this Court has already ruled, Plaintiffs' complaint is fatally deficient. Defendants will move to dismiss that complaint on December 22, 2022. Plaintiffs now belatedly request a preliminary injunction based on the same arguments and evidence that this Court has already rejected. Plaintiffs' motion for a preliminary injunction should either be summarily denied or deferred until after the Court has ruled on the motion to dismiss. In the alternative, Defendants' time to respond to the preliminary injunction motion should be extended to December 22, 2022.

On November 8 – less than a month ago – and after considering extensive briefing, declarations from Albertsons' and Kroger's CFOs, and declarations from two experts, this Court denied Plaintiffs' Motion for a Temporary Restraining Order ("TRO") enjoining Albertsons' payment of a special dividend.[3] That ruling was based on the Court's determination that Plaintiffs had failed to demonstrate a likelihood of success on their claims under the Sherman Act and its state law analogues because (1) "there is no evidence of an agreement between Albertsons and Kroger to pay the pre-closing dividend," and the evidence instead shows the special dividend was consistent with "an independent decision by Albertsons to return value to its shareholders," Tr. of Proceedings at 66:13-69:17; and (2) "there is insufficient evidence that Albertsons will not be able to effectively compete, or [that payment of the special dividend] will otherwise restrain trade, during the pendency of the merger review." *Id.* at 69:18-72:20. On the latter point, the Court also recognized that "neither Kroger nor Albertsons has an incentive to economically weaken Albertsons during the pendency of the merger review" given the Defendants have repeatedly and publicly represented that will not raise a "failing firm" defense to their proposed merger, the

---

[3] In advance of briefing Plaintiffs' motion for a TRO, Defendants proposed treating the motion as one for preliminary injunction in the interest of expediency - Plaintiffs refused and insisted on proceeding with their motion for a TRO.

possibility their proposed merger may not close, and the fact that Kroger would not want to "pay almost $25 billion to acquire a weakened Albertsons." *Id.* at 71:23-72. Finally, the Court recognized that there was no public interest in restraining the dividend given its payment would not "result in a lessening of competition," and any restraint on payment would harm Albertsons by interfering with Albertsons' internal affairs and management by its board of directors, and harm its shareholders who have "acted in reliance on the commitment to pay the dividend." *Id.* at 73:2-23.

In light of the Court's ruling, Defendants asked Plaintiffs to withdraw their defective complaint. Plaintiffs refused to do so, yet they made no attempt to amend to address the fatal flaws identified in their claims. Nor did they do anything else for more than three weeks following the Court's ruling. Instead, at about midnight on November 30, Plaintiffs informed Defendants that they would be filing a request for a preliminary injunction the next day. On December 1, Plaintiffs filed a memorandum of law and supporting declarations in support of that request, but no actual motion for preliminary injunction setting forth the specific relief sought or how Plaintiffs will satisfy the bonding requirements for such relief imposed by Federal Rule of Civil Procedure 65(c) and/or Section 16 of the Clayton Act given the special dividend they seek to enjoin – and to which Albertsons' shareholders of record as of October 24 have a contractual right to payment of – totals nearly $4 billion.

Since this Court denied Plaintiffs' TRO Motion, on November 15, the state court in the parallel proceeding commenced by the Washington Attorney General extended its order temporarily restraining payment of the special dividend from November 17 to December 9, and scheduled a preliminary injunction hearing (with live witnesses) for December 7 and 9. The Washington state court has further stated on the record that it intends to rule on December 9 (when

the TRO expires). Notably, Plaintiffs did not file any request for a preliminary injunction following this Court's denial of their TRO Motion, notwithstanding the fact that the Washington state restraining order was set to expire on November 17. Plaintiffs in this case presumably filed on December 1 (with essentially no notice) because the default deadline for Defendants' opposition would be December 8 – in the midst of the Washington hearing,[4] and to further delay payment of the special dividend by filing yet another procedural motion for preliminary relief.

Plaintiffs' latest filing openly asks the Court to "revisit" (i.e., reconsider) its previous ruling, yet Plaintiffs have failed to identify any changes in fact or law since November 8. All of the supposedly "new" evidence in Plaintiffs' December 1 filing or described above is based on public documents or produced information that was available to Plaintiffs at the time of the Court's prior ruling. Indeed, the most frequently cited piece of "new" evidence is the November 8 hearing transcript. Plaintiffs focus on Albertsons' – not Defendants'[5] – representations that it will pay the special dividend as soon as all legal restraints are lifted; this should not come as a surprise given the dividend was properly declared and has been due and owing to Albertsons shareholders since the payment date of November 7. But while Plaintiffs attempt to repackage their flawed claims and re-interpret Albertsons' financials yet again, Plaintiffs still cannot establish a likelihood of success on their flawed claims, cannot establish a threat of irreparable harm to competition, and

---

[4] During a meet and confer on the afternoon of Friday, December 2, Plaintiffs – for the first time – requested that Defendants oppose their request for a preliminary injunction *by today, December 5* (they now seek to shorten Defendants' response time to tomorrow, December 6). They made this request with full awareness of the Washington State court hearing schedule and notwithstanding the fact that they filed no emergency motion to shorten Defendants' response time and provide no factual basis for why the schedule should be so expedited. Nor could they given Plaintiffs waited weeks to file their request.

[5] Plaintiffs inappropriately refer to "Defendants" without differentiating between Albertsons and Kroger. Kroger has made no such representations as the determination to pay the special dividend is an independent decision of Albertsons.

9

the balance of equities clearly disfavors granting injunctive relief that would harm Albertsons and its shareholders and serve no public interest.

Plaintiffs' decision to sit on a request for preliminary injunction for weeks, and then file a repetitive motion without notice with an opposition due date in the middle of the Washington state court hearing appears to be purely tactical, transparent gamesmanship. And the fact that Plaintiffs do not think a hearing on their request for preliminary injunction is necessary is just further proof that their December 1 filing – despite its attempts to obfuscate and confuse based on public documents and documents available at the time of the November 8 hearing – offers nothing new that should cause this Court to reconsider its clearly reasoned denial of Plaintiffs' motion for a temporary restraining order. As a result, the Court can and should summarily deny Plaintiffs' repetitive request without imposing additional burdens on either Defendants or the Court itself.

The next logical step in this case given the Court's prior order on preliminary relief is not another round of briefing on preliminary relief and a hearing covering the same ground at the expense of this Court's limited time and resources; it is dismissal of the complaint. As the Court has already recognized, Plaintiffs' claims under the Sherman Act and its state law analogues are unsupported and fatally flawed. For the same reasons, Plaintiffs' complaint does not state a "plausible" claim under the standards articulated in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and is subject to dismissal under Federal of Civil Procedure 12(b)(6). By stipulation of the parties, Defendants' motions to dismiss the Complaint are due on December 22. Accordingly, Defendants respectfully request that the Court stay Plaintiffs' request for preliminary injunction (to the extent it is not summarily denied) pending resolution of the motion to dismiss or, alternatively, extend Defendants' time to oppose Plaintiffs' request to December 22, and deny the request for preliminary injunction on the papers.

| Event | Deadline |
|---|---|
| Defendants to file motion(s) to dismiss and, if necessary, any opposition to request for preliminary injunction. | December 22, 2022 11:59 pm |
| Plaintiffs to file any opposition(s) to Defendants' motion(s) to dismiss. | January 5, 2023 11:59 pm |
| Defendants to file reply in support of motion(s) to dismiss | January 12, 2023 11:59 pm |

Defendants object to the lengthy schedule proposed by Plaintiffs to resolve Defendants' forthcoming motion to dismiss and, if necessary, Plaintiffs' request for a preliminary injunction. The special dividend is validly declared and due and owing to Albertsons' shareholders. Plaintiffs chose to make an unprecedented challenge to a company's independent decision to pay a dividend to its shareholders out of its capital surplus; Plaintiffs should not be allowed to impose continuing harm on Albertsons and its shareholders by drawing out the Court's resolution of Plaintiffs' meritless claims.

Defendants also object to Plaintiffs' request that the Court issue an "interim order" prohibiting payment of the Special Dividend until the motions to dismiss and/or request for preliminary injunction are resolved. Plaintiffs cannot effectively secure a TRO – which is extraordinary relief that they carry a heavy burden to justify – by simply requesting an "interim order" that grants such relief when this Court has *already* determined that Plaintiffs cannot meet that burden and denied their previous TRO Motion. Nor should Plaintiffs be allowed to leverage the fact that a Washington state court judge entered a temporary restraining order to secure another opportunity to seek preliminary relief that this Court has already rejected. Plaintiffs' efforts to

procedurally stymy payment of a validly-declared divided that is due and owing to Albertsons' shareholders should be rejected.

Dated: December 5, 2022                    Respectfully submitted,

**FOR PLAINTIFF DISTRICT OF COLUMBIA:**

KARL A. RACINE
Attorney General for the District of Columbia

KATHLEEN KONOPKA
Senior Advisor to the Attorney General for Competition Policy

*/s/ Adam Gitlin*
ADAM GITLIN
Section Chief, Antitrust and Nonprofit Enforcement Section
C. WILLIAM MARGRABE
GEOFFREY COMBER
ELIZABETH G. ARTHUR
Assistant Attorneys General
Office of the Attorney General
400 6th Street NW, Suite 10100
Washington, D.C.  20001
(202) 735-7516
adam.gitlin@dc.gov


**FOR PLAINTIFF STATE OF CALIFORNIA**

ROB BONTA
**Attorney General of California**
KATHLEEN E. FOOTE
Senior Assistant Attorney General
NATALIE S. MANZO
Supervising Deputy Attorney General

*/s/ Paula Lauren Gibson*
PAULA LAUREN GIBSON
Deputy Attorney General
California State Bar Number 100780
300 S Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 269-6040
paula.gibson@doj.ca.gov

**FOR THE STATE OF ILLINOIS**

**KWAME RAOUL**
**Attorney General**

/s/ *Elizabeth L. Maxeiner*
ELIZABETH L. MAXEINER
Bureau Chief, Antitrust
PAUL J. HARPER
BRIAN M. YOST
Assistant Attorney General
Office of the Illinois Attorney General
100 W. Randolph Street
Chicago, IL 60601
(773) 590 6837
paul.harper@ilag.gov

*Counsel for Plaintiff States*

**FOR DEFENDANT ALBERTSONS COMPANIES, INC.**

**DEBEVOISE & PLIMPTON LLP**

*/s/ Edward D. Hassi*
EDWARD D. HASSI
LEAH S. MARTIN
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 383-8000
thassi@debevoise.com
lmartin@debevoise.com

*Counsel for Defendant Albertsons Companies, Inc.*

**FOR DEFENDANT THE KROGER CO.**

*/s/ Mark A. Perry*
Mark A. Perry
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC  20036
Phone: (202) 682-7511

Matthew M. Wolf (*pro hac vice*)

14

Michael B. Bernstein
Sonia K. Pfaffenroth
Jason Ewart
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001

*Counsel for Defendant The Kroger Co.*