UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DISTRICT OF COLUMBIA, et al.,

       *Plaintiffs*,

  v.

KROGER CO., et al.,

       *Defendants*.

Civil Action No. 1:22-cv-03357 (CJN)

### ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

    This matter is before the Court on Plaintiffs' Motion for a Preliminary Injunction, ECF No. 54, which seeks to block the payment of a dividend (referred to as the "Pre-Closing Dividend") by Defendant Albertsons to its shareholders. For the reasons stated below (and incorporating the Court's prior decision in this matter), the Court denies Plaintiffs' Motion.

    The Court has previously denied Plaintiffs' request to enjoin payment of the Pre-Closing Dividend. In particular, on November 8, 2022, based on the Parties' written submissions and following a hearing, the Court denied Plaintiffs' Motion for a Temporary Restraining Order. Order Denying Motion for Temporary Restraining Order, ECF No. 50. The Court held that Plaintiffs had failed to demonstrate that they were likely to succeed on two elements of their Section 1 claim: (1) that Kroger and Albertsons had entered into an "agreement" to pay the Pre-Closing Dividend, TRO Hr'g Tr. at 66:13–69:17, and (2) that payment of the dividend would likely have anticompetitive effects, *id.* at 69:18–72:20. The Court also held that Plaintiffs failed to demonstrate irreparable harm absent a temporary restraining order. *Id.* at 72:21–73:5.

    Plaintiffs now seek the same relief, albeit through a Motion for a Preliminary Injunction. *See* Pls.' Mot. for Prelim. Inj., ECF No. 54. The standard, however, remains the same; to prevail,

1

Plaintiffs must: "(1) establish a likelihood of success on the merits; (2) show irreparable harm in the absence of preliminary relief; (3) demonstrate that the equities favor issuing an injunction; and (4) persuade the court that an injunction is in the public interest." *See Trump v. Thompson*, 20 F.4th 10, 31 (D.C. Cir. 2021) (internal quotations omitted) (alteration adopted).

Plaintiffs primarily repeat the same evidence and arguments on which they relied previously (and which the Court held were insufficient), but they do urge the Court to "revisit[]" its earlier decision in light of certain new evidence. *See* Pls.' Mot. at 2. First, as to the question of whether Defendants agreed that Albertsons would pay the Pre-Closing Dividend, Plaintiffs argue that their "additional investigation and review of regular course documents . . . demonstrate that Kroger was involved in deciding both the amount and the timing of the Special Dividend and that the Dividend would not have been paid absent the merger agreement." *Id.* at 1–2; *accord id.* at 4–7, 13–14. And as to harm to competition, Plaintiffs argue that new evidence "debunk[s]" Albertsons's contention that it will be able to tap its revolving credit facility and annual revenues to meet its $6 billion liquidity needs. *Id.* at 2, 7–10.

The Court is not persuaded. With respect to Plaintiffs' argument that Kroger and Albertsons entered into an unlawful agreement to pay Albertsons's shareholders the Pre-Closing Dividend, Plaintiffs proffer nine exhibits as evidence of that agreement. *See* Exhibits 1–9 of Pls.' Mot., ECF No. 54-2. The Court has already considered Exhibits 1, 3, 5, 8, and 9—which were relied upon by Plaintiffs in support of their motion for a temporary injunction—and Plaintiffs have failed to demonstrate that the Court's prior analysis of those documents was incorrect. And Exhibits 4, 6, and 7 are entirely unrelated to Kroger. *See* Kroger's Opp. to Mot. for Prelim. Inj., ECF No. 57, at 12. That leaves Exhibit 2, which is an excerpt from Kroger's preliminary discussion materials about a potential acquisition of Albertsons. *See* Exhibit 2 to Pls.' Mot., ECF

No. 54-2, at 102–13.  Those materials provide that, in February 2022, Albertsons had already settled on issuing a special dividend, "financed via debt and cash-on-hand," *and either* raising third-party equity *or* "[a] potential merger with [Kroger]." *See id.* at 105; *accord id.* at 106 ("Given current liquidity available, [Albertsons] is considering a special dividend with or without a transaction with [Kroger]."); *id.* at 107 ("[Albertsons] has communicated to [Kroger] that they plan to move forward with a special dividend").  If anything, Exhibit 2 is more consistent with the Court's prior conclusion that Albertsons made a unilateral decision to issue a special dividend to its shareholders than Plaintiffs' contention that it agreed with Kroger to do so.

As for claimed harm to competition, Plaintiffs first argue that even if Albertsons will have access to $3 billion in liquidity between its cash reserve and revolving credit facility, Albertsons's projected net income of $1.7 billion is "well shy of its remaining $3 billion in liquidity needs." S*ee* Pls.' Mot. at 20.  But as explained by Albertsons's President and CFO, looking to the company's net income rather than revenue understates the company's liquidity, as net income "incorporates non-cash expenses (such as depreciation and amortization . . . ) that do not impact . . . liquidity" and "is calculated after payment of many of the expenses that are part of [Albertsons's] liquidity needs, such as pension obligations, interest payments, and operating and finance leases." McCollam Decl., ECF 60-1 at ¶ 9–10; *see also* Smith Decl., ECF No. 60-3, at ¶ 5 (explaining that Albertsons's expected operating cash flow is $3.3 billion, which is sufficient to cover the remaining $3 billion in liquidity needs).  As the Court previously decided, Albertsons's projected revenue is sufficient to satisfy its projected liquidity needs.  TRO Hr'g Tr. at 70:23–71:19.

Second, Plaintiffs argue that Albertsons's revolving credit facility should not be considered a source of liquidity because the Merger Agreement prohibits its use without Kroger's approval

3

during the pendency of the merger.  Pls.' Mot. at 20.  But the Merger Agreement only prohibits Albertsons from incurring debt outside of "the ordinary course of business consistent with past practice."  *See* Exhibit 1 to Pls.' Mot., ECF No. 54-2, at 68–69 (Merger Agreement 6.1(n)(1)).  And as the revolving credit facility has been used several times in the last few years—including to fund the Pre-Closing Dividend and to provide Albertsons with additional cash funds in the early days of the COVID-19 pandemic—there is significant countervailing evidence to the proposition that relying on the revolving credit facility to satisfy its liquidity needs would be outside of "the ordinary course of business" for Albertsons.  *See* Pls.' Mot. at 12 (explaining that Albertsons borrowed $2 billion from the revolver in March 2020, which it repaid in full in June 2020); Albertsons's Opp. to Mot. for Prelim. Inj., ECF No. 60, at 16 ("[I]t is public knowledge that Albertsons did draw on the ABL to finance payment of the Special Dividend.").

Finally, Plaintiffs argue that the revolver's variable interest rate makes it "highly unlikely that Albertsons would access it in a liquidity crunch."  Pls.' Mot. at 21.  But interest payments themselves are part of Albertsons's liquidity needs, *see* McCollam Decl. at ¶ 10, and Plaintiffs have failed to demonstrate that Albertsons has somehow forgotten to account for such payments in its liquidity calculations.

For these reasons, and the various reasons previously stated at the temporary restraining order hearing on November 8, 2022, Plaintiffs have failed to establish that the Pre-Closing Dividend should be enjoined.  Accordingly, it is

**ORDERED** that the Motion for a Preliminary Injunction is DENIED.

DATE:  December 12, 2022

　　　　　　　　　　　　　　　　　　　　　　　　　　　CARL J. NICHOLS
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge